UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DOUGLAS MERRITT, | § | |
|    *Petitioner/Movant*, | § | |
| | § | |
| v. | § | Miscellaneous Action No. 1:23-cv-01467 |
| | § | |
| CRIBL, INC. and CLINT SHARP, | § | |
|    *Respondents*. | § | |

---

| | | |
|---|---|---|
| *In re:* | | |
| SPLUNK, INC., | § | |
|    *Plaintiff and Counter-Defendant*, | § | |
| | § | |
| v. | § | Case No. 22-cv-07611-WHA, in the |
| | § | United States District Court, Northern |
| CRIBL, INC. and CLINT SHARP, | § | District of California, San Francisco |
|    *Defendants and Counterclaimant*. | § | Division |
| | § | |
| | § | Judge: The Hon. William H. Alsup |

**NONPARTY DOUGLAS MERRITT'S MOTION TO QUASH
SUBPOENA AND MOTION FOR PROTECTIVE ORDER**

On November 1, 2023, Defendants Cribl Inc. and Clint Sharp (collectively "Cribl") issued a subpoena seeking the deposition of Nonparty Douglas Merritt ("Merritt"). Merritt is the former CEO of Splunk, Inc. ("Splunk"), a party to the underlying proceeding. Merritt files this Motion to Quash and Motion for Protective Order (the "Motion to Quash") under the apex doctrine to avoid undue burden, harassment, and duplicative discovery. Merritt had no direct supervisory role over the people or events at issue in the underlying proceeding. Team managers and department heads, who themselves reported to vice presidents and senior vice presidents, multiple levels removed from Merritt, had direct supervisory involvement. Cribl has scheduled depositions of eight such Splunk employees and past employees, and those depositions are scheduled from December 5th through the 15th. Prior to the completion of those eight depositions, and before it could possibly

know whether Merritt's deposition is necessary at all, Cribl noticed Merritt's deposition to take place on December 4th. Merritt's deposition is, at best, premature and is likely not warranted at all.

The apex doctrine restricts a party's ability to depose high-ranking executives and officials and to limit such discovery when it is unnecessary, cumulative, duplicative, unduly burdensome, or harassing. *E.g.*, *Dollar Phone Access, Inc. v. AT&T Inc.*, No. 3:15-CV-0404-K, 2016 WL 11664308, at *1 (N.D. Tex. Mar. 7, 2016) ("In the Fifth Circuit, it is necessary to use less intrusive means, such as deposing lesser-ranking employees, before attempting to depose high level executives.").

As explained below, Cribl has not shown that Merritt has any unique knowledge of the information sought by Cribl, and Cribl has failed to first seek such discovery from other more convenient and less burdensome sources, such as depositions of other current Splunk employees and through Rule 30(b)(6) corporate depositions of Splunk. The Court should quash the subpoena for Merritt's deposition until Cribl meets its threshold obligation of seeking this discovery through less burdensome and intrusive avenues. Alternatively, the Court should modify the subpoena limiting the scope, duration, and time of Merritt's deposition, if it is allowed to proceed.

## I.    Background

Merritt is a resident of Austin, Texas, and the current Chairman, Chief Executive Officer ("CEO"), and President of Aviatrix, a leading provider of cloud networking solutions. Prior to his current roles at Aviatrix, from 2015 to 2021, Merritt was Splunk's President and CEO of Splunk, a publicly-traded company with a market capitalization of over $25 billion. Cribl seeks Merritt's deposition in an underlying proceeding styled *Splunk, Inc. v. Cribl, Inc. and Clint Sharp*, pending in the United States District Court for the Norther District of California, Case No. 22-cv-07611-WHA (the "Underlying Proceeding").

In the Underlying Proceeding, Splunk brings claims against Cribl for patent infringement, copyright infringement, violations of the Digital Millennium Copyright Act, breach of contract, tortious interference with prospective business relations, and for violations of California Unfair Competition Law.

Cribl has scheduled the deposition of numerous current or former Splunk employees in the Underlying Proceeding, many of which have yet to be taken. *See* **Ex. F** (11/29/23 Kessel email to Wingard identifying upcoming depositions). Several of these depositions will be corporate depositions of Splunk taken pursuant to Fed. R. Civ. P. 30(b)(6). *See Id.;* **Ex. F(1)** (Cribl's Rule 30(b)(6) notice to Splunk). Cribl's requested and scheduled deposition of Splunk employees is as follows:

- Rob Eber (Topics 5, 13, and 15), scheduled for December 5, 2023;
- VJ Garcia (Topics 8, 10, 17, and 20), scheduled for December 6, 2023;
- Camille Gaspard (Topics 2, 4, and 7), scheduled for December 7, 2023;
- Jay Beckstoffer (Topics 18 and 19), scheduled for December 8, 2023;
- Brad Lovering (Topics 1, 3, 5, 6, 11, and 17), scheduled for December 12, 2023;
- Kedra Simm (Topic 9), scheduled for Kedra Simm;
- Hal Rottenberg, scheduled for December 15, 2023; and
- Toni Pavlovich, scheduled for December 15, 2023.

*Id.*; *see also* **Ex. F(1)** (Cribl's notice of corporate deposition of Splunk under Rule 30(b)(6)).

On November 1, 2023, Cribl issued a subpoena for documents to Merritt and a separate subpoena for his deposition. *See* **Ex. A** (Cribl's document subpoena to Merritt) and **B** (Cribl's deposition subpoena to Merritt). The deposition subpoena, which is the subject of this motion, sets a compliance date of December 4, 2023, at 9:00 a.m. at the office of Quinn Emanuel Urquhart & Sullivan, LLP, 300 West 6th St., Suite 2010 Austin, TX 78701. *See id.*

This Court has jurisdiction pursuant to Rule 45, because it is the court where compliance is sought by the subpoena. *See* Fed. R. Civ. P. 45(d)(1), (3). This motion is timely because it is filed prior to the date of compliance in the subpoena. *E.g., Hoeflein v. Crescent Drilling & Prod.,*

*Inc.*, No. SA-19-CV-01194-FB, 2020 WL 7643122, at *2 (W.D. Tex. Dec. 23, 2020) ("The rules [Rule 45] do not define timely, but courts have generally nonetheless required that a motion to quash, to be considered timely, be filed before the date set in the subpoena for compliance.") (citing *MetroPCS v. Thomas*, 327 F.R.D. 600, 608 (N.D. Tex. 2018)).

Based on communications with counsel for Cribl, the testimony Cribl seeks to elicit from Merritt includes the following topics:

- Mr. Merritt's personal supervision of Defendant Clint Sharp's role at Splunk regarding certain special projects during 2016-2017;

- Splunk's consideration whether to develop and market Packrat and Black Marlin;

- Splunk's consideration to develop and market DSP and Ingest Actions;

- Knowledge of Cribl's participation in Splunk's Technical Alliance Partnership ("TAP") Program before 2020;

- The circumstances and considerations as to why Cribl was briefly terminated from Splunk's TAP Program in 2020;

- The circumstances and considerations as to why Cribl was re-admitted to Splunk's TAP Program in 2020 and Mr. Merritt's role in the re-admission;

- The considerations leading up to Cribl's final termination from Splunk's TAP Program in November 2021.

*See*, **Ex. E** (11/27/23 Guledjian email to Wingard).

As discussed below and in Merritt's Declaration attached as **Exhibit 1**, Merritt lacks unique personal knowledge of the six matters on which his testimony is sought. As for the first topic, Merritt had no direct supervisory role over Defendant Clint Sharp, who was a product manager at Splunk. *See* **Ex. 1, at ¶ 6**. Instead, Sharp reported to a Vice President of Product Management, who reported to a Senior Vice President of Engineering, who in turn reported to Merritt as CEO. Similarly, as to topics two through five, Merritt lacks unique personal knowledge over the products and programs on which his testimony is sought. *See* **Ex. 1, at ¶¶ 7, 8**. As CEO of Splunk, Merritt

was several levels removed from those matters, which were overseen in the first instance by team leaders or department heads who reported to vice presidents who in turn reported to Merritt. *Id.*

*Even if* the evidence showed Merritt had some knowledge of these topics, Cribl cannot show it has met its threshold obligation to seek that information from less intrusive and burdensome sources. Cribl has yet to complete Splunk's Rule 30(b)(6) deposition, which can or should cover any of the areas of discovery sought through Merritt's oral deposition. *See* **Ex. F** (listing Splunk witnesses yet to be deposed) and **Ex. F(1)** (identifying topics for Cribl's deposition of Splunk's corporate representatives). Indeed, several of the topics on which Cribl seeks testimony from Merritt are *identical* to the topics in Cribl's 30(b)(6) deposition notice, and the Splunk designees on those topics have yet to be deposed.[1] Put simply, Cribl has not even attempted to obtain relevant discovery from a less burdensome and harassing means than taking the deposition of a corporate CEO like Merritt.  And the discovery Cribl has sought affirmatively shows that the discovery it seeks from Merritt is duplicative of the discovery it has sought—and is in the process of obtaining—from Splunk.

Finally, as a former CEO of Splunk, Merritt no longer has access to the documents, emails, and electronically stored information that he would need to provide accurate and helpful information. *See* **Ex. 2, at ¶ 6**; **Ex. C**. Merritt left Splunk more than two years ago in November of 2021. His departure predated Splunk's filing of the Underlying Proceeding by more than a year.

---

[1] For example, Topic 9 of Cribl's 30(b)(6) notice seeks Splunk's testimony on "All facts and circumstances regarding Splunk's acceptance of Cribl to its TAP Program in 2018, Splunk's continuation of that TAP partnership through 2019, 2020, and part of 2021, and subsequent termination of Cribl from its TAP Program, including but not limited to the grounds on which Splunk has terminated any other partners (if any) from its TAP Program." *See* **Ex. F(1).** This topic covers the identical issues on which Cribl seeks to depose Merritt as described in the final four points listed above. Similarly, Topic 8 covers additional duplicative matters on which Cribl seeks Merritt's testimony – namely Splunk's software products such as Ingest Actions and Data Stream Processor (DSP). *See **id.***

Any testimony that Merritt could give will necessarily be stale and inferior to the testimony of Splunk's current representatives due to the passage of time.

For the foregoing reasons, upon his receipt of the two Cribl subpoenas, Merritt's counsel contacted Cribl's counsel in an attempt to reach a compromise to limit duplicative discovery and undue burden on Merritt. *See, generally,* **Ex. 2** at ¶¶ 7-9, **Ex. D** and **Ex. E**. Merritt agreed to respond and has responded to the document subpoena to the limited extent possible, given that he no longer has possession, custody, or control of Splunk materials. Further, Merritt offered to make himself available for a short deposition on topics that Cribl designated in advance of the deposition. In response, Cribl stated that it did not expect the deposition to last the full seven hours but refused to agree to any specific limit on its duration. **Ex. E** (11/28/23 Guledjian email to Wingard). Cribl said it would try to provide a non-exhaustive set of documents that Cribl intends to use during Merritt's deposition. Cribl agreed to limit the scope of the deposition to topics and events that occurred prior to Merritt's departure from Splunk, but did not otherwise agree to limit the scope of the deposition. *Id.* In response, Merritt offered to make himself available for a one-hour deposition on the previously identified topics. *Id.* (11/29/23 Wingard email to Guledjian). Cribl did not respond.

Cribl's insistence on deposing Splunk's former CEO for up to seven hours on virtually any topic without first showing that the discovery it seeks cannot be secured through more convenient, less burdensome means warrants protection from this Court.

## II.    Applicable Standard

Rule 26(b)(2)(C) provides that a court "must limit the frequency or extent of discovery otherwise allowed by these rules" if "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome,

or less expensive; [or] (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action . . . ." Fed. R. Civ. P. 26(b)(2)(C). In addition, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c)(1). Similarly, Rule 45(d)(3) provides that on motion, the court "must quash or modify a subpoena that: . . .subjects a person to undue burden."

Whether a subpoena is reasonable must be determined according to the facts of the case. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). The movant seeking a protective order bears the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)). "Generally, modification of a subpoena is preferable to quashing it outright." *Wiwa*, 392 F.3d at 818 (citations omitted). "The court must balance the competing interests of allowing discovery and protecting the parties and deponents from undue burdens." *Gauthier v. Union Pac. R. Co.*, No. CIVA1:07CV12(TH/KFG), 2008 WL 2467016, at *3 (E.D. Tex. June 18, 2008). The court has broad discretion in determining whether to impose a protective order. *Harris v. Amoco Prod. Co.*, 768 F.2d 669, 684 (5th Cir. 1985).

### III.    Argument

The Court should quash the oral deposition of Merritt, Splunk's former President and CEO who has no unique personal knowledge relevant to the Underlying Proceeding. Merritt should not be required to suffer the undue burden and harassment of providing seven hours of testimony about

information for which he has no unique personal knowledge as CEO, Chairman, and President of Splunk and which can be given by others. *See Gauthier*, 2008 WL 2467016, at *3–4.

Courts in the Fifth Circuit regularly prevent depositions of high-level or "apex" executives when the executive does not have unique personal knowledge, or where the party seeking the deposition has not first attempted to obtain the same information through a less burdensome means of discovery. *Dollar Phone Access, Inc.*, 2016 WL 11664308, at *1 (stating that courts in the Fifth Circuit require parties to attempt less intrusive means prior to deposing high-level executives) (citing *Gaedeke Holdings VII, Ltd. v. Mills*, No. 3:15-MC-36-D-BN, 2015 WL 3539658, at *3 (N.D. Tex. June 5, 2015)); *see also Oyekwe v. Research Now Group, Inc.*, No. 3:19-CV-1085-S-BN, 2020 WL 1064868, at *2 (N.D. Tex. Mar. 4, 2020) (same); *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979) (affirming trial court's order vacating deposition of senior executive and requiring the noticing party to first depose the other witnesses that had more knowledge of the facts).

This Court, thus, "has authority to prevent or alter apex depositions under the Federal Rules to avoid duplication, harassment, and burdensomeness." *Langley v. Int't Bus. Machines Corp.*, No. A-18-CV-LY, 2019 WL 4577115, at *4 (W.D. Tex. Sept. 20, 2019) (quoting *Schmidt v. Goodyear Tire & Rubber Co.*, 2003 WL 27375845 (E.D. Tex. Jan. 13, 2003)).[2] And it has the authority to do so here.[3]

---

[2] Courts in other jurisdictions similarly recognize the need to protect high-ranking executives from unnecessary depositions. *See also, e.g.*, *Boston Ret. Sys. v. Uber Techs., Inc.*, No. 19-CV-06361-RS (DMR), 2023 WL 6132961, at *2 (N.D. Cal. Sept. 19, 2023) (recognizing apex depositions "creates a tremendous potential for abuse or harassment" and the trial court has discretion to limit discovery "where the discovery sought can be obtained from some other source that is more convenient, less burdensome, or less expensive.") (quoting *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012)).
[3] The fact that Merritt is the former CEO of Splunk does not preclude the application of the apex doctrine. *See, e.g.*, *Langley v. Int'l Bus. Machines Corp.*, No. A-18-CV-443-LY, 2019 WL 4577115, at *4 (W.D. Tex. Sept. 20, 2019) (applying doctrine to prohibit depositions of a former CFO).

"One long-established factor considered by courts in determining whether an apex deposition should be taken is whether the individual has *unique* personal knowledge of the matter in the case." *Langley*, 2019 WL 4577115, at *4  (citation omitted) (emphasis added)*; see also Buchholz v. Crestbrook Ins. Co.*, No. 1:20-CV-449-RP, 2021 WL 3571277, at *3 (W.D. Tex. Aug. 11, 2021) (granting motion to quash deposition of senior executive where the party seeking the deposition did not show the executive "was personally involved" in decisions at issue in the dispute and did not show the executive had "unique personal knowledge of any facts in this case").

Here, despite its claim that Merritt has personal information, Cribl has failed to explain how that information is unique, and Cribl has made no showing that Merritt possesses personal knowledge or information that it cannot obtain from other, less burdensome sources. *See Dollar Phone Access, Inc.*, 2016 WL 11664308, at *1. Indeed, Cribl seeks to depose Merritt before it has even completed its 30(b)(6) depositions of Splunk, which will cover the same deposition topics.

Further, Cribl has failed to show that Merritt had any unique, personal involvement in these matters. *See, generally,* **Ex. 1, at ¶¶ 6-8.** Merritt's involvement with the areas of questioning Cribl has identified is limited to the knowledge he acquired as the top executive at Splunk. On this basis alone, Cribl theorizes Merritt *might* have knowledge about some of the executive decisions or strategy of the company during his tenure as CEO. Suspicion that an apex witness may have unique knowledge is not enough, and this is exactly the type of apex fishing expeditions that Courts within this district have prohibited. *See, e.g., Langley*, 2019 WL 4577115, at *4 ("Not only does it not yet appear that the CEO, CFO or former CFO have 'unique' information relevant to his claims, it also appears that Langley can obtain the same information these witnesses may have from other sources. The Court will therefore **DENY** Langley's motion to the extent it seeks permission to take these three depositions.").

At this stage of the proceedings, before Cribl has even attempted to obtain the discovery from many other sources that are more readily discoverable, less burdensome, and more convenient, Courts frequently grant motions to quash to protect apex deponents. *See Langley*, 2019 WL 4577115, at *4; *Dollar Phone Access, Inc.*, 2016 WL 11664308, at *1; *see also Oyekwe*, 2020 WL 1064868, at *2 (granting motion for protective order where the party seeking the depositions failed to meet his "burden to show that either executive has unique personal knowledge" about relevant claims or show that he had "pursued less-intrusive means – such as seeking to depose lesser-ranking employees or obtain a deposition under Federal Rule of Civil Procedure 30(b)(6) – and that those means were inadequate"); *Computer Acceleration Corp. v. Microsoft Corp.*, No. 9:06-CV-140, 2007 WL 7684605, at *1 (E.D. Tex. June 15, 2007) (denying request to depose a former "apex" officer despite emails showing that executive's direction and encouragement on certain relevant company initiatives because the party seeking the deposition failed to show that any personal knowledge of the executive was "'unique' or unavailable from lower-level employees").

### IV.    Conclusion

For the foregoing reasons, the Court should enter an order protecting Merritt by forbidding Cribl from deposing Merritt and quashing Cribl's subpoena. Merritt also requests an order staying any further compliance related to the deposition subpoena until further order of this Court. Alternatively, the Court should enter an order modifying Cribl's subpoena by limiting the duration of any deposition of Merritt to no more than two (2) hours, limiting the deposition to topics on which Cribl shows it is unable to secure from other Splunk representatives, and requiring the parties to select a mutually-agreeable deposition date. Merritt requests all further relief to which he is entitled.

Dated: December 1, 2023.                    Respectfully submitted,

SCOTT DOUGLASS & McCONNICO LLP
303 Colorado Street, Suite 2400
Austin, Texas  78701
Telephone: (512) 495-6300
Facsimile: (512) 495-6399


By: *Stephen E. McConnico*
    Stephen E. McConnico
    Texas Bar No. 13450300
    SMcConnico@scottdoug.com
    Steve J. Wingard
    Texas Bar No. 00788694
    SWingard@scottdoug.com
    John W. Ellis
    Texas Bar No. 24078473
    JEllis@scottdoug.com

    ***Attorneys for Non-Party Douglas Merritt***

CERTIFICATE OF CONFERENCE

Pursuant to Federal Rule of Civil Procedure 26(c)(1) and Local Rule CV-7(i), I hereby certify that counsel for Merritt have conferred with counsel for Cribl, Inc. and Clint Sharp on several occasions in a good faith effort to resolve the dispute without the need for court action. Counsel met and conferred on these issues through emails and at least two separate phone calls. Specifically, through the course of those negotiations, Counsel for Merritt offered to present Merritt for a deposition on a limited set of pre-defined topics and for a duration of one (1) hour on a mutually agreeable date the week of December 4, 2023. Counsel for Cribl insisted on reserving the right to depose Merritt for up to the allotted time of seven (7) hours, not including any additional time for questions by the Plaintiff, Splunk, Inc., and to not limit the deposition to any pre-defined topics.

*/s/ Steven J. Wingard*
Steven J. Wingard

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served upon all counsel of record via the CM/ECF electronic noticing system, email, certified mail, return receipt requested, or US mail, as indicated below, on this the 1st day of December, 2023.

**<u>VIA EMAIL</u>**
Michael T. Zeller
*michaelzeller@quinnemanuel.com*
Tigran Guledjian
*tigranguledjian@quinnemanuel.com*
Christopher A. Mathews
*chrismathews@quinnemanuel.com*
Valerie Roddy
*valerieroddy@quinnemanuel.com*
Marie Hayrapetian
*mariehayrapetian@quinnemanuel.com*
Scott Schlafer
*scottschlafer@quinnemanuel.com*
Sara R. Miller
*saramiller@quinnemanuel.com*
Melissa Hurtado
*melissahurtado@quinnemanuel.com*
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

***Attorneys for Defendants &
Counterclaimant Cribl, Inc. and Clint Sharp***

**<u>VIA EMAIL</u>**
Frank E. Scherkenbach
*scherkenbach@fr.com*
Andrew G. Pearson
*pearson@fr.com*
Adam Kessel
*kessel@fr.com*
Kevin Su
*su@fr.com*
Ethan J. Rubin*)*
*erubin@fr.com*
Kayleigh E. McGlynn
*mcglynn@fr.com*
Daniel H. Wade
*wade@fr.com*
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210
Telephone: (617) 542-5070
Facsimile: (617) 542-8906

Olivia T. Nguyen
*onguyen@fr.com*
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 400
Redwood City, CA 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

Joseph Warden
*warden@fr.com*
**FISH & RICHARDSON P.C.**
222 Delaware Ave., 17th Floor
Wilmington, DE 19801
Telephone: (302) 652-5070
Facsimile: (302) 652-0607
***Attorneys for Plaintiff &Counter-Defendant
Splunk Inc.***

*/s/ John W. Ellis*
John W. Ellis